**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**RICHARD M. GOODMAN,**

        **Plaintiff(s),**         **CASE NUMBER:  04-75011
HONORABLE VICTORIA A. ROBERTS**

**v.**

**CHARLES G. MADY, et al.,**

        **Defendant(s).**
_____/

**ORDER**

**A.     PROCEDURAL POSTURE**

The Court held a status conference with counsel for the parties on April 25, 2006. During the status conference, Plaintiff requested leave to amend claims which were dismissed in the Court's September 23, 2005 Order.  Counsel for Defendant Charles A. Mady ("A. Mady") and dismissed Defendant Executive Realty (hereinafter "Defendants") objected, asserting that an amendment is unnecessary, futile and impermissible in light of the Court's Order.  The Court subsequently entered an Order directing Plaintiff to submit a letter requesting clarification of the September Order.  *See* Order, May 3, 2006.  Among other things, Plaintiff wanted a determination of whether he can replead dismissed claims.  Per Defendants, this issue arose because the September Order does not state whether the claims were dismissed with prejudice.  Once the Court clarified its Order, Plaintiff was to file an amended complaint.  *Id.*  The Court was to schedule a conference call, and Defendant was directed not to answer the amended

1

complaint or file any motions until after the conference call. *Id*.

In July 2006, Plaintiff submitted a letter. But, he did not request clarification of the September Order. Instead, he advised of his desire to replead Count III (breach of consent order) against A. Mady and Count XIII (agency) against Executive Realty. Plaintiff provides a narrative regarding the amendments he would make to those counts.

In its response letter, Defendants point out that Plaintiff did not follow the Court's directives, and they object to the proposed amendments. Defendants assert that amendment of Count III would be futile and that some of the allegations Plaintiff intends to add in support of Count XIII are inconsistent with evidence which is part of the record.

In the September 2005 Order, the Court granted Charles G. Mady's ("G. Mady") request for a stay of this case pending resolution of his parallel criminal case.[1] Since G. Mady has been sentenced, Plaintiff filed a motion to lift the stay. Plaintiff's request to amend his Complaint must also be addressed.

## B.  REQUEST TO AMEND COMPLAINT

Because Plaintiff did not follow the Court's directive, Plaintiff did not give the Court an opportunity to resolve whether: 1) the claims dismissed in its September Order were dismissed with prejudice, and 2) he may replead dismissed claims. As discussed more fully below, however, it is not necessary for the Court to resolve whether it intended to grant Defendant's motion with prejudice because it could grant leave to amend regardless. But, the Court declines to grant leave because the proposed

---

[1] *United States of America v Mady,* U.S. Eastern District Court, Case No. 04-80408.

amendments are futile.

The Court did not state in its September 2005 Order whether it granted Defendants' motion to dismiss certain claims with prejudice. But, unless a court indicates otherwise, it is presumed that a dismissal for failure to state a claim under FRCP 12(b)(6) is with prejudice, because it is an adjudication on the merits. *Pratt v Ventas, Inc.,* 365 F.3d 514, 522 (6th Cir. 2004). The Court, nevertheless, has discretion to grant leave to amend (pursuant to FRCP 15(a)) following a dismissal order, except in limited circumstances when amendment is not permitted. *Sinay v Lamson & Sessions, Co.,* 948 F.2d 1037, 1041 (6th Cir. 1991). One such circumstance is when the amended complaint could not withstand a FRCP 12(b)(6) motion. *Id.* Here, the Court finds it would be futile to permit Plaintiff to amend either count as proposed.

### i. Breach of Consent Order

In Count III of Plaintiff's First Amended Complaint, he alleged that G. Mady violated the terms of the Consent Order entered in a prior civil action,[2] and that A. Mady had actual knowledge of the terms of the Consent Order and acted in concert with G. Mady to frustrate and interfere with the Order:

> Co-Defendant Charles A. Mady, with actual knowledge of the terms and conditions of the Consent Order, has specifically acted in concert with Defendant Charles G. Mady in connection with the obligations of the preceding paragraphs, as more fully set forth in paragraphs 63 and 90 below.

First Amended Complaint at ¶42.

In *CFTC v Mady*, Plaintiff made virtually the same allegation when he requested

---

[2] *See Commodity Futures Trading Commission v Mady* ("*CFTC v Mady*"), U.S. Eastern District Court, Case No. 02-72394.

3

an evidentiary hearing and judgment of contempt against both Madys for violation of the Consent Order. Plaintiff's motion was based in part on documents showing that G. Mady sold real estate to his father at a discounted rate and pledged the proceeds to another victim of G. Mady's schemes (Demitrios Athanasiou). Plaintiff asserted that the Madys' actions were taken to circumvent G. Mady's restitution obligation.

In an Order entered February 16, 2005, the Court denied Plaintiff's motion because the terms of the Consent Order limited Plaintiff's standing as a third-party beneficiary to enforcement of G. Mady's restitution obligation to Plaintiff. Therefore, the Court held that Plaintiff did not have standing to challenge the propriety of the property transfer. Further, the Court held that Plaintiff could not obtain a judgment of contempt against A. Mady because A. Mady was not a party to the Consent Order.

In his motion for dismissal of Count III of Plaintiff's First Amended Complaint, A. Mady argued that the claim was barred by the Court's February 2005 Order. The Court granted A. Mady's motion. The Court found that the allegations were factually insufficient to state a claim against A. Mady and, furthermore, that "the Court already rejected Plaintiff's attempt to assert a claim against A. Mady under the Consent Order, because A. Mady was not party to it." Order, September 23, 2005 at p. 9.

Plaintiff now attempts to resurrect his claim that A. Mady conspired with G. Mady to violate the Consent Order for the third time. Rather than the general allegation that the Madys acted in concert, Plaintiff wants to incorporate additional paragraphs in the Complaint and include details underlying the claim--specifically, that G. Mady transferred real estate to A. Mady and pledged the proceeds to a third party in order to avoid his restitution obligation:

> If allowed, Plaintiff would correct paragraph 42, which now reads, ". . . as more fully set forth in paragraphs 63 **and** 90 below", [sic] to provide ". . . as more fully set forth in paragraphs 63 **to** 90 below". [sic] Plaintiff would also plead, with greater specificity, that: A[.] Mady was aware of the reporting and restitution obligations imposed on G. Mady by the Consent Order; A. Mady undertook to provide funds to or on behalf of G. Mady; A. Mady agreed to purchase G. Mady's interest in real estate for $1,500,000 as set out in Exhibit E to the Complaint; A. Mady assisted G. Mady in obtaining from Demitrios Athanasiou funds which G. Mady was required by the Consent Order to report and use for restitution; A. Mady made no effort to assure that the funds made available to or for the benefit of G. Mady were reported or used for restitution purposes; A. Mady abetted G. Mady in pledging the proceeds from the sale of A. Mady's interest in the Gratiot property to Athanasiou to the detriment of those entitled to restitution under the Consent Order; and A. Mady aided and abetted G. Mady in receiving funds and things of value, or the benefit of funds and assets, in a way that G. Mady could obtain the benefit of the funds without reporting them or using them for restitution.

Plaintiff's July 25, 2006 letter, p. 2.

Neither of the proposed amendments cures the defect in Plaintiff's claim. First, paragraphs 63 through 90 do not support a claim for breach of the Consent Order. Those paragraphs only include allegations in support of Counts VIII through XII[3] against A. Mady, all of which either allege fraudulent acts by A. Mady before the Consent Order was entered or fraudulent acts that occurred after the Consent Order was entered but which are unrelated to it.

Second, the Court already ruled that Plaintiff does not have standing to assert a claim for violation of the Consent Order based on G. Mady's transfer of real estate to A. Mady, and that the claim is not cognizable against A. Mady because A. Mady was not

---

[3]Count VIII--conspiracy; Count IX--actual and apparent agency; Count X--liability under the Commodities Exchange Act; Count XI--intentional and/or negligent and reckless infliction of emotional injury; and Count XII--breach of contract.

5

party to the Consent Order. These defects cannot be cured with additional factual allegations.

For these reasons, it is futile to permit Plaintiff to amend his Complaint to add/modify a claim against A. Mady for breach of the Consent Order.

**ii.    Agency**

In his First Amended Complaint, Plaintiff only alleged actual and apparent agency in Count IX against A. Mady, although it was based in part on G. Mady's employment with Executive Realty. The Court allowed Plaintiff to proceed on the theory which pertained to A. Mady's involvement in G. Mady's commodities futures trading scheme, but granted Defendants' motion to dismiss the theories based on G. Mady's employment with Exclusive Realty and that A. Mady was vicariously liable as an aider and abettor.

The Court also dismissed Plaintiff's claim against Executive Realty in Count XIII. Plaintiff alleged that Exclusive Realty was vicariously liable as a co-conspirator in the Madys' alleged acts because they were acting in the course and scope of their employment.[4] The Court held that Plaintiff failed to adequately allege either that the Madys' scheme was carried out within the scope of their employment or that Exclusive Realty was a co-conspirator:

> There are no factual allegations which support Plaintiff's conclusory assertion that the alleged "Ponzi" scheme was carried out by the Mady Defendants within the scope of their employment with Exclusive Realty. Plaintiff alleges in the complaint that Exclusive Realty acts as a real estate agent and broker in connection with the

---

[4]A. Mady was the President, Chief Executive Officer and principal stockholder. G. Mady was an employee.

> purchase and sale of real estate. *See* First Amended Complaint at
> ¶4. There are no allegations indicating that Exclusive Realty also
> handles commodities futures trading, or that it authorized either of
> the Madys to engage in such trading on its behalf. Further, Plaintiff
> does not allege that A. Mady held G. Mady out as an employee of
> Exclusive Realty as a means of inducing Plaintiff to invest with G.
> Mady, or that Plaintiff was otherwise under the impression that he
> was dealing with G. Mady in his capacity as an employee of
> Exclusive Realty. There are simply no allegations which indicate,
> *prima facie*, that Defendants' employment with Exclusive Realty was
> a factor in furtherance of the alleged scheme.
>
> Plaintiff's assertion that Exclusive Realty is a co-conspirator similarly
> lacks supporting facts. Plaintiff asserts that the alleged conspiratorial
> acts were carried out by A. Mady in his position as President and
> CEO. Again, however, there are no allegations which indicate that
> A. Mady participated in the scheme through Exclusive Realty or
> utilized the company to assist G. Mady in carrying out his alleged
> unlawful acts.

Order, September 23, 2005 at p. 26.

Plaintiff now requests permission to add an agency claim against Executive Realty as Count XIII. Plaintiff wants to add allegations the Court said was lacking; namely, that "A. Mady claimed a right to control G. Mady's activities in his capacity as the President and CEO of Exclusive Realty," and that "the Mady Defendants held out G. Mady's alleged employment with Exclusive Realty as a means of inducing him to begin or continue investing money with G. Mady, or that [the Madys] used the alleged employment relationship to facilitate the scheme." Notably, the language quoted from the September Order actually pertained to Plaintiff's agency claim against A. Mady (Count IX) based on G. Mady's employment with Exclusive Realty. *See* Order, September 23, 2005 at pp. 14-15.

Plaintiff additionally wants to add facts regarding the Madys' respective representations relative to Exclusive Realty and their conduct through Exclusive Realty:

7

> In support of [the allegations the Court found lacking], Plaintiff will assert the following specific facts: (a) in inducing Plaintiff to invest with his son, A. Mady stressed the family's past business successes, including Exclusive; (b) A. Mady continually asserted and assured Plaintiff that he was directly involved with his son's investment activities; (c) Defendants exploited Plaintiff's knowledge that Exclusive Realty was regarded as successful and prosperous and Plaintiff's knowledge that A. Mady, as President of Exclusive, had the right to control the conduct of G. Mady at Exclusive; (d) A. Mady held G. Mady out to Plaintiff as an Exclusive employee; (e) A. Mady told Plaintiff that he was the corporate agent for Mady Funding, an entity through which G. Mady engaged in the fraudulent activities at issue in this lawsuit; (f) G. Mady, with the approval of A. Mady and Exclusive, used Exclusive stationary to communicate with Plaintiff to convey the impression that G. Mady and Exclusive, with their stature were involved; (g) G. Mady, with the approval of A. Mady and Exclusive, used the Exclusive facsimile to communicate with Plaintiff regarding the investments; (h) A. Mady, with the approval of G. Mady and Exclusive, used the Exclusive telephones and telephone numbers in the financial dealings with Plaintiff; and (i) Exclusive authorized A. Mady to use its name and assets to enhance the reputation and provide an aura of legitimacy to the activities of G. Mady.

Plaintiff's July 25, 2006 letter, pp. 3-4.

The Court previously summarized Michigan authority on agency law:

> "An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account." *Meretta v Peach*, 195 Mich. App. 695, 697 (1992). "The test of whether an agency has been created is whether the principal has a right to control the actions of the agent." *Id*.
>
> * * *
>
> **"Apparent authority may arise when acts and appearances lead a third person reasonably to believe that an agency relationship exists." *Id* at 698-699. A court must consider all surrounding facts and circumstances to determine whether an agent had apparent authority to perform a particular act. *Id* at 699.** Michigan courts utilize a three-part test in analyzing vicarious liability under a theory of apparent agency:
>
>> [First] The person dealing with the agent must do so with belief

> in the agent's authority and this belief must be a reasonable one; [second] such belief must be generated by some act or neglect of the principal sought to be charged; [third] and the third person relying on the agent's apparent authority must not be guilty of negligence.
>
> [*Little v Howard Johnson Co.,* 183 Mich. App. 675, 683 (1990)](citations omitted). "Hence, the alleged principal must have made a representation that leads the plaintiff to reasonably believe that an agency existed and to suffer harm on account of a justifiable reliance thereon." *Id.*

Order, September 23, 2005 at pp. 13-14 (emphasis added).

In light of the liberal standards of FRCP 12(b)(6) and 15, the Court could exercise an abundance of caution and permit Plaintiff to add this count. When liberally construed, one could perhaps argue that the allegations that Exclusive Realty permitted the Madys' to use its stationary, telephones and fax to communicate with Plaintiff about the scheme could reasonably lead a third party to believe that an agency relationship (relative to the scheme) existed, particularly since A. Mady was also an officer of the company.

But, on close inspection, the allegations fail to establish a nexus between the Madys' involvement in the trading scheme and their involvement with Exclusive Realty that is sufficient to support a claim of vicarious liability for the Madys' conduct under an agency theory. That is, Plaintiff's proposed allegations do not establish that either of the Madys acted as an agent for Executive Realty *in furtherance of the trading scheme*.

For instance, many of the proposed allegations are that the Madys held out the success of Exclusive Realty and G. Mady's employment there to bolster Plaintiff's confidence in G. Mady. Plaintiff also alleges that Exclusive Realty allowed them to use its name and assets for the same purpose. However, even if the Madys and Exclusive

9

Realty made representations which suggested that G. Mady was a legitimate, successful business person, these allegations do not reasonably suggest that either of the Mady Defendants carried out their trading scheme on behalf of Exclusive Realty. Per Plaintiff, Exclusive Realty acts as a real estate agent and broker in connection with the purchase and sale of real estate. First Amended Complaint at ¶4. Exclusive Realty's successes in real estate have no apparent bearing on commodities trading. Therefore, the alleged representations regarding the Madys' connection and successes with Exclusive Realty are not sufficient, even *prima facie*, to "lead a third person reasonably to believe that an agency relationship exist[ed]" with respect to commodities trading. *Meretta,* 195 Mich. App. at 698-699.

Plaintiff proposes to add the allegation that the Madys "used the alleged employment relationship to facilitate the scheme." However, Plaintiff does not allege a factual basis for this conclusory assertion. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v Allen*, 411 F.3d 712, 716 (6th Cir. 2005), *cert. den.,* 126 S. Ct. 1911 (2006). *See also Rachells v Cingular Wireless*, 483 F.Supp.2d 583, 588 (N.D. Ohio 2007)("A well-pleaded allegation . . . is one that alleges specific facts and does not merely rely upon conclusory statements."). Furthermore, "[a]pparent authority must be traceable to the principal and cannot be established by the acts and conduct of the agent." *Meretta*, 195 Mich. App. at 699. Plaintiff does not allege that Exclusive used the employment relationship to facilitate the trading scheme, nor does he allege facts which would support such an assertion.

Plaintiff proposes to allege that A. Mady represented that he had control over G.

Mady as an Exclusive Realty employee and that he was involved in G. Mady's investment activities. However, there are no facts alleged which support Plaintiff's implied assertion that Exclusive Realty authorized A. Mady to exercise control over G. Mady in his official capacity as a means of furthering the trading scheme. And, there are no allegations which suggest that Exclusive Realty directly or impliedly authorized A. Mady in his official capacity to monitor G. Mady's investment activities on its behalf. Therefore, even if true, neither of the proposed allegations implicates Exclusive Realty in the trading scheme.

The relevance of A. Mady's alleged representation that he was the corporate agent for Mady Funding is not apparent since there is no allegation that Exclusive Realty was involved with Mady Funding or that A. Mady was involved in his capacity as the President and CEO of Exclusive Realty. Also, presuming that it is the same company, this allegation appears to conflict with Plaintiff's assertion in an affidavit and the Complaint that he and G. Mady formed Mady Funding Company, LLC. *See* Goodman June 4, 2002 Aff. at ¶9, attached to Def's August 29, 2006 letter; Fourth Amended Complaint at ¶19.

Lastly, Plaintiff alleges that the Madys used Exclusive Realty's stationary, telephones and fax machine to communicate with him about the investments, all with Exclusive Realty's approval and purportedly to create the impression that Exclusive Realty was "involved." However, the assertion that Exclusive Realty permitted the Madys to use its office tools in order to create the impression that Exclusive Realty was involved is conclusory and there are no facts alleged to support it. Also, even if Exclusive Realty acquiesced in the Madys' use of its office tools to communicate with

Plaintiff, the communications still came from the Madys, not Exclusive Realty. That is, the purpose of those communications--to convey false information about Plaintiff's investments--is not clearly traceable to Exclusive Realty because there is no allegation that Exclusive Realty engaged in any conduct which could reasonably be construed as authorizing or ratifying the *substance* of those communications on its behalf.

Plaintiff's proposed amendment is based on conclusory assertions not supported by factual allegations and semantics to create the impression of a connection for which he has no evidence at this time. Therefore, the Court denies Plaintiff's request to amend his Complaint.

**C.     MOTION TO LIFT STAY**

In its September 2005 Order, the Court granted G. Mady's request for a stay because of the parallel pending criminal matter against G. Mady. The Court held that allowing the case to proceed would infringe upon G. Mady's Fifth Amendment privilege against self-incrimination. *See* Order, September 23, 2005 at pp. 31-36.

On February 16, 2006, G. Mady pled guilty to two counts of embezzlement for his failure to invest all of the money he received for trading in commodity futures from over ten victims, between October 1999 and May 2002. *See United States v Mady,* Case no. 04-80408, Plea Agreement at pp. 2-3. In November 2006, G. Mady was sentenced to 60 months imprisonment. Now that G. Mady's criminal matter has concluded, Plaintiff asks the Court to lift the stay on discovery because his Fifth Amendment rights are no longer in jeopardy.

A. Mady opposes Plaintiff's motion. He argues that G. Mady maintains his Fifth Amendment rights until the case is final, which includes any period for appeal and/or

remand.[5]  Further, A. Mady argues that Plaintiff failed to follow the Court's instruction to file an amended complaint which strikes out the allegations and factual assertions dismissed by the Court.  Instead, Plaintiff requested leave to amend.  A. Mady says that he would be prejudiced if discovery is allowed to proceed before he is allowed to answer an amended complaint which has been streamlined as the Court instructed and before the required conferences pursuant to FRCP 16 and 26(f) are held.  Without these preliminary steps, A. Mady opines that Plaintiff will embark on an overly broad and invasive fishing expedition in order to harass, embarrass and unduly burden him.

A continued stay to preserve a party's Fifth Amendment privilege is only appropriate after a defendant has been sentenced and the judgment of conviction is final if there is a reasonable apprehension of further charges.  See Mitchell v United States, 526 U.S. 314, 326 (1999); United States v Smith, 245 F.3d 538, 543 (6th Cir. 2001).  G. Mady's plea encompassed the claims asserted by Plaintiff here, see United States v Mady, Case no. 04-80408, Plea Agreement at pp. 2-3, and it appears that his time for direct appeal lapsed.[6]  Therefore, there is no apparent reason for G. Mady to fear further incrimination from his participation in this lawsuit.  The Court should lift the stay of proceedings.

However, the Court also requires Plaintiff to amend his Complaint to remove dismissed allegations and counts.  Defendants are to answer the amended complaint.

---

[5]Notably, A. Mady does not cite any authority which indicates that he has standing to assert G. Mady's Fifth Amendment rights as a ground to oppose lifting the stay.

[6]Notice of appeal was not filed with the Court and no appeal appears to be pending before the Sixth Circuit.

The parties should then proceed with the required FRCP 16 and 26(f) conferences and discovery as they would in the normal course.

**D.     CONCLUSION**

Plaintiff is to file an amended complaint as described above, by July 20, 2007. Plaintiff's request to amend his First Amended Complaint is DENIED. Plaintiff's Motion to Lift the Stay is GRANTED.

**IT IS SO ORDERED.**

                                                                s/Victoria A. Roberts                   
                                                                Victoria A. Roberts
                                                                United States District Judge

Dated: July 10, 2007

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 10, 2007.<br><br>s/Carol A. Pinegar                   <br>Deputy Clerk |